UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RAY SKILLMAN OLDSMOBILE    )
GMC TRUCK, INC.,                              )
                                                            )
          Plaintiff,                         )
                                                            )   CASE NO. 1:05-cv-0204-DFH-WTL
     v.                                       )
                                                            )
GENERAL MOTORS CORPORATION,      )
                                                            )
          Defendant.                      )

ENTRY ON DEFENDANT'S MOTION TO DISMISS

On December 12, 2000, General Motors sent a letter to all of its dealers indicating that it would be phasing out its Oldsmobile division.  The Oldsmobile line had become unprofitable and, according to the letter, GM sought to focus its energies and resources on fewer vehicle lines to improve its overall competitive position.[1]  The letter did not provide a time line for the phase-out other than to say that the division would continue to produce automobiles and operate through the current model life cycles unless demand fell below economically viable levels.

Over the next several years, GM tried to reach voluntary transition agreements with all Oldsmobile dealers under a buy-out program.  The vast

---

[1]General Motors and its dealers enter into separate agreements with respect to each division.  For example, though plaintiff sold both Oldsmobile automobiles and GMC trucks at the same dealership, it entered into a separate dealership franchise agreement for each division.

majority of Oldsmobile dealers participated in the program.  Plaintiff Ray Skillman Oldsmobile & GMC Truck, Inc. ("Skillman") did not reach an agreement with GM. Consequently, on October 27, 2004, GM sent a letter to Skillman stating it was providing twelve months notice that it would not be renewing the Oldsmobile Dealer Sales and Service Agreement ("Dealership Agreement") between the two when it expired at the end of October 2005.  In turn, Skillman sought GM's approval of additional compensation under the buy-out program due to special circumstances, but was unsuccessful in that effort.

Skillman, having seemingly exhausted GM's willingness to work out an agreed solution and unhappy at the prospect of proceeding as only a GMC truck dealership, Skillman has brought suit against GM.  Its seven-count complaint alleges:  (1) deceptive franchise practices in violation of Indiana statutes; (2) breach of contract; (3) negligent misrepresentation; (4) fraud; (5) breach of fiduciary duty; (6) unjust enrichment; and (7) breach of an implied covenant of good faith.  GM has moved to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief can be granted.  The motion is denied as to Counts I and II and granted on all other Counts.

*Standard of Review*

In ruling on a motion to dismiss under Rule 12(b)(6), the court must assume as true all well-pleaded facts set forth in the complaint, construing the allegations

liberally and drawing all inferences in favor of the plaintiff.  *Brown v. Budz*, 398 F.3d 904, 908-909 (7th Cir. 2005).  Under the liberal notice pleading allowed in most federal civil actions, the plaintiff is entitled to the benefit not only of its allegations but of any other facts it might assert that are not inconsistent with the allegations of the complaint.  See*, e.g., Trevino v. Union Pacific Railroad Co.*, 916 F.2d 1230, 1239 (7th Cir. 1990) (reversing dismissal).  Defendants are entitled to dismissal only where it appears beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief.  *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930. 933 (7th Cir. 2005).  Nevertheless, a plaintiff may still plead itself out of court if the complaint includes particulars that show it cannot possibly be entitled to the relief it seeks.  *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th  Cir. 1994).

*Analysis*

*Count I – Breach of Indiana Franchise Statutes*

In the first count, Skillman alleges that GM has engaged in deceptive franchise practices in violation of the Indiana Deceptive Franchise Practices Act. The Act prohibits franchise agreements from containing provisions that permit "unilateral termination of the franchise if such termination is without good cause or in bad faith," or that allow "the franchisor to fail to renew a franchise without good cause or in bad faith."  Ind. Code §§ 23-2-2.7-1(7), (8).  The Indiana Supreme Court has interpreted Indiana Code § 23-2-2.7-4, which provides franchisees with a private right of action against franchisors for damages, as authorizing a private

suit based not only upon any prohibited contents of the written agreement, but also suits based upon a franchisor's termination or failure to renew the franchise without good cause. *Continental Basketball Ass'n, Inc. v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134, 139 (Ind. 1996).

Skillman argues that the franchise agreement and Indiana law prohibit GM from ending the franchise relationship unless either Skillman has breached or GM withdraws entirely (not only its Oldsmobile division) from the local market. The terms of the Dealership Agreement include a provision stating: "[D]ealer is assured of an opportunity to enter into a new [A]greement(s) at the expiration date if General Motors determines that [D]ealer has fulfilled its obligations under the [A]greement." Couple the explicit terms of the agreement with the good faith obligation on the part of the franchisor with respect to any termination or nonrenewal and, according to Skillman, "good cause" does not include a franchisor's unilateral choice to stop manufacturing the product sold by franchisees.

The parties agree that the Dealership Agreement is a franchise agreement and subject to the Indiana Deceptive Franchise Practices Act. However, GM argues that its decision to shut down the Oldsmobile line entirely amounts to a market withdrawal that qualifies as good cause. See *Wright-Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 138 & n.4 (7th Cir. 1990) (applying Indiana law, discussing Puerto Rican case holding that *complete* market withdrawal could provide good

-4-

cause for termination, but holding that under Indiana franchise statute, "economic reasons internal to the franchisor are not sufficient to meet the good cause requirement").

It seems unlikely that a franchisor is committed by law to continue to make and sell each product line in perpetuity, regardless of profitability and market changes. But the problem may be one of market definition. Skillman points out that GM is not abandoning the automobile market. This is not a case where the franchisor is abandoning a market segment altogether, leaving a geographical area, or consolidating its distribution network. None of the cases cited by GM address the situation alleged here, where the franchisor with multiple brands is shutting a particular brand so that it can focus on the promotion and sales of its other automobile brands or divisions in the same market. As would any franchisee in its position, Skillman asks why kill off Oldsmobile – why stop making only the brand that it sells? GM responds by claiming that Oldsmobile was no longer competitive in the market. That claim may very well be a legitimate business conclusion reached in good faith, and it may well constitute good cause for non-renewal. Nevertheless, it also presents a question that should not be answered as a matter of law at the pleadings stage. Accordingly, the court will not dismiss Count I under Rule 12(b)(6).

*Count II – Breach of Contract*

The applicable Dealership Agreement between GM and Skillman was effective on November 1, 2000 and was set to expire on October 31, 2005. Both parties agree that the choice of law provision in the contract requires the court to apply Michigan law to this count. Skillman claims that GM has violated the agreement in several respects, all of which are tied in some manner to its decision to eliminate the Oldsmobile brand. GM contends that, at best, Skillman has alleged anticipatory breach because the Dealership Agreement had not been terminated and was not due to expire until after suit was filed. According to GM, Michigan law requires Skillman to abandon the contract before it sues for anticipatory breach, and it clearly has not done so.

Under the doctrine of anticipatory breach, when, prior to the time for performance, a party to a contract unequivocally declares its intention not to perform, the other party has the option of suing immediately for the breach or waiting until the time of performance. *Stoddard v. Manufacturers Nat'l Bank of Grand Rapids*, 593 N.W.2d 630, 640 (Mich. App. 1999). GM argues the two choices are mutually exclusive and cites cases from jurisdictions other than Michigan that support that position. Skillman points out that there is no citation to any decision from a Michigan court where the two options are said to be exclusive alternatives. Skillman also contends the obligation to mitigate in this instance would be at loggerheads with any requirement that it abandon the contract in order to sue. This court has not found a published decision from the

Michigan courts specifically stating that the non-breaching party *must* either abandon the contract or wait to sue, but that has been the ruling of some district courts in similar franchise litigation of GM's decision to shut down the Oldsmobile brand. See, *e.g., Robert Basil Motors, Inc. v. General Motors Corp.,* 2004 WL 1125164 (W.D.N.Y. 2004).[2]

In case of anticipatory breach, the general principle of contract law teaches that the non-breaching party has a duty to take reasonable steps to avoid any harmful consequences following the repudiation. As stated by Professor Corbin, the injured party "must not proceed with his own performance if his so doing will increase the extent of his injury." 9 Arthur Linton Corbin, *Corbin on Contracts* § 983 at p. 836 (interim ed. 1979). The bar against proceeding with performance under the contract is qualified by an "if" – if it increases the injury – suggesting that abandonment may not always be a prerequisite to suing for the anticipatory breach. The court can imagine a number of circumstances involving long term contracts where, despite confirmation that a party intends to breach the contract in the future, it is better for all involved, or at least reasonable, for the injured party to continue under the contract and inequitable to forbid that party from securing relief for the breach.

---

[2]GM has attached to its motion copies of several decisions from other federal district courts and two Michigan state courts on similar motions to dismiss similar claims by Oldsmobile dealers. In only one case was a motion to dismiss granted in its entirety. Even then, plaintiff was given an opportunity to file an amended complaint to attempt to cure certain deficiencies.

There is, however, another basis for allowing the breach of contract count to remain a part of Skillman's case.  Skillman has alleged some current, not anticipatory, breaches.  See, *e.g.*, *Crest Cadillac Oldsmobile, Inc. v. General Motors Corp.*, 2005 WL 3591871, *3 (N.D.N.Y. 2005) (denying motion to dismiss similar contract claim where complaint alleged some current breaches).  Under Article 6.4.1 of the Dealership Agreement, GM has the obligation to supply Skillman with "a mix of models and series of Motor Vehicles identified in the Motor Vehicle Addendum in quantities adequate to enable Dealer to fulfill its obligations in its Area of Primary responsibility."  Skillman alleges that GM has not done that. While GM maintains that there is no complaint that Skillman has failed to meet its obligations in the area of primary responsibility, at the pleadings stage the court can certainly hypothesize a set of facts wherein Skillman could prevail on its claim that GM breached the Dealership Agreement by failing to provide it with reasonable quantities of vehicles to sell.  *Brown v. Budz,* 398 F.3d 904, 912 (7th Cir. 2005) (court will hypothesize any set of facts consistent with allegations to avoid dismissal).

GM seeks to argue the merits of various other breaches alleged in Count II, positing for example that Skillman's claim of breach for failure to allow it to "achieve a reasonable return on investment" as referred to in Article 4.1 of the Dealership Agreement is a tortured interpretation of a provision meant to clarify the foundation for GM's decisions regarding the number of dealerships established in various geographical areas.  Because one of the claimed contract breaches

being pursued by Skillman could have merit with appropriate supporting evidence, there is no good reason to explore further hypothetical examples at this point to see if any other set of facts could support a breach of any other particular contract provision.  If the breach of contract claim survives after discovery, then the question of which provisions of the contract are subject to a determination as to breach and which, as a matter of law, create no duty on the part of GM could be one for a jury instruction conference.  The pending request from GM is to dismiss Count II.   The liberal interpretation of pleadings and minimal requirements for surviving a motion to dismiss require denial.  If, however, GM later believes it is entitled to summary judgment with respect to whether or not a particular contractual duty arises out of the Dealership Agreement, it can present the issue.

*Count III – Negligent Misrepresentation*

Before reaching a substantive conclusion with respect to whether Count III states a claim upon which relief may be granted, the question of which state's law applies to Skillman's tort claims must be addressed.  Relying heavily on the choice of law provision the parties agreed to in the Dealership Agreement, GM maintains that Michigan law applies to all counts other than Count I, which alleges a breach of the Indiana franchise statutes.  The application of one state's laws to claims based on a contract does not bar the application of another state's law to those claims founded in tort.  Skillman suggests that Indiana law should apply.  See*, e.g., Paper Mfrs. Co. v. Rescuers, Inc.*, 60 F. Supp. 2d 869, 874-75 (N.D. Ind.

1999).   However, Skillman also believes its claims survive regardless of which states law applies.

As a federal court exercising its diversity jurisdiction, this court applies the choice of law rules of Indiana.  *Jean v. Dugan*, 20 F.3d 255, 261 (7th Cir. 1994). The traditional choice-of-law rule for torts in Indiana was *lex loci delicti*, under which the substantive law of the place of the tort is applied.  However, in *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071 (Ind. 1987), the traditional rule was modified so that the law of the place of the tort is no longer applied in every case. Under the modified rule, there is a presumption that the law of the place of the tort applies unless the place of the tort "bears little connection" to the legal action.  *Matter of Estate of Bruck*, 632 N.E.2d 745, 747 (Ind. App. 1994).  When the place of the tort has little connection to the legal action, the court considers other factors, such as the place where the conduct causing the injury occurred, the residences or places of business of the parties, and the place where the relationship between the parties is centered.  *Hubbard*, 515 N.E.2d at 1073-74.  But even before the court engages in the appropriate choice of law analysis, it needs to determine if there is a conflict between the two.  *Jean*, 20 F.3d at 260.

The Indiana Supreme Court has recently confirmed that, other than in very limited factual circumstances such as those involving an employer/employee relationship, see, *e.g., Eby v. York-Division, Borg-Warner,* 455 N.E.2d 623 (Ind. App. 1983), negligent misrepresentation is not a viable cause of action in Indiana.

*Passmore v. Multi-Management Servs., Inc.*, 810 N.E.2d 1022 (Ind. 2004). Michigan law appears to be equally limited in its recognition of the tort of negligent misrepresentation. See *In re F & M Distributors, Inc. Securities Litigation*, 937 F. Supp. 647, 658 (E.D. Mich. 1996); *In re Consumers Power Co. Securities Litigation*, 105 F.R.D. 583, 596 (E.D. Mich. 1985); *Williams v. Polgar*, 215 N.W.2d 149, 156-58 (Mich. 1974).   However, under Michigan law, the economic loss doctrine bars any recovery in tort, short of fraud in the inducement, when there is a written contract between the parties that can be used to allocate damages. *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612, 616 (Mich. 1992). Quoting from Judge Posner's decision in *Miller v. United States Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990), the Michigan Supreme Court wrote:  "we have a body of law designed for such disputes.  It is called contract law." *Neibarger*, 486 N.W.2d at 616.  In this instance, regardless of which state's law applies, the negligent misrepresentation claim should be dismissed.


*Count IV – Fraud*

Here again, the court need not determine which state's common law of fraud applies.  The Federal Rules of Civil Procedure apply to the pleadings in this court, regardless of which state's substantive law applies.   *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 754-55 (7th Cir. 2004).   Rule 9(b) requires that the circumstances of fraud be pled with particularity.  Skillman has not done that.

The allegations of fraud in Skillman's Complaint are that GM represented that Oldsmobile would remain a viable product line, model numbers would be expanded, there was no intention on GM's part to terminate the line, and it would continue to provide a reasonable quantity of automobiles.  These representations are alleged to have been made prior to and during the course of the parties' Dealership Agreement.  Nothing more specific has been provided in the Complaint.  Because of the integration clause in the contract, the economic loss doctrine, the choice of law analysis, and the difficulty in basing a fraudulent claim on a statement about a party's future intentions, the particularity missing from the complaint is especially important here.  The exact nature of any false representation and the timing of not only the statement, but any reliance on the part of Skillman as well, are details required by Rule 9(b).  The court requires such details as well to determine where the tort is alleged to have occurred and whether the claim is viable under the appropriate state law.  Accordingly, Count IV is dismissed without prejudice to possible amendment.

*Count V – Breach of Fiduciary Duty*

Article 17.1 of the Dealership Agreement states that "no fiduciary obligations are created" by it.  In Count V, Skillman alleges breach of a fiduciary duty.  Parties are generally free to contract away what the common law might provide.  And in this instance, where two seasoned commercial entities engaged in arms length business transactions, there are generally no fiduciary duties created.  *Epperly v. Johnson*, 734 N.E.2d 1066, 1076 (Ind. App. 2000).  A fiduciary

duty arises out of a relationship between parties where one reasonably reposes faith, confidence and trust in the judgment and advice of the other. *Vincencio v. Ramirez,* 536 N.W.2d 280, 284 (Mich. App. 1995). A written agreement between two businesses whose relationship is driven by profit, and which specifically states that no fiduciary duty is created, negates any concern that one is placing blind faith in the judgment of the other. Accordingly, the court will dismiss Count V.

*Count VI – Unjust Enrichment*

Unjust enrichment is a quasi-contractual remedy available when there is no express contract or when there is a dispute as to whether a contract exists. *Liggett Restaurant Group, Inc. v. City of Pontiac,* 676 N.W.2d 633, 639 (Mich. App. 2003); *Ahuja v. Lynco Ltd. Med. Research,* 675 N.E.2d 704, 708-09 (Ind. App. 1996). A legal fiction or constructive contract is created by the court to compensate a party who has provided value to another who otherwise will have received a windfall of sort. The uncontested existence of a valid, binding express contract covering the relationship between GM and Skillman defeats any effort by Skillman to receive compensation from GM through a constructive contract.

*Count VII - Breach of Implied Covenant of Good Faith and Fair Dealing*

Neither Indiana nor Michigan recognizes an independent tort action for breach of an implied contractual covenant of good faith. *Comfax Corp. v. North American Van Lines, Inc.,* 587 N.E.2d 118, 123-24 (Ind. App. 1992); *Ulrich v.*

*Federal Land Bank of St. Paul*, 480 N.W.2d 910, 911 (Mich. App. 1991). A request that the court imply a covenant of good faith is a request for equitable modification of the express terms of the Dealership Agreement. The parties have agreed that Michigan law applies to that agreement, so the court looks to Michigan law for guidance on whether an obligation of good faith is to be implied. In *Burkhardt v. City Nat. Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. App. 1975), the Michigan Court of Appeals indicated that the law will not hesitate to imply a covenant of good faith in a contract where a party makes the manner of its performance discretionary. And while this is a true statement in nearly all jurisdictions, breach of such a covenant is a breach of the contract, not a basis to pursue some independent action. *Clark Bros. Sales Co. v. Dana Corp.*, 77 F. Supp. 2d 837, 852 (E.D. Mich. 1999). Skillman's claim for breach of an implied covenant of good faith and fair dealing is part of the breach of contract claim in Count II.

*Conclusion*

For the reasons expressed in this entry, defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Counts III, V, VI and VII of plaintiff's Complaint are dismissed for failure to state a claim upon which relief may be granted. Count IV is dismissed without prejudice for failure to plead fraud with the particularity required by Fed. R. Civ. P. 9(b), and plaintiff may file an amended complaint seeking to cure the defects in Count IV, if it wishes to do so, no later

than April 14, 2006.  Counts I and II are not dismissed.  Defendant's motion for

oral argument on its motion to dismiss is hereby denied.


       So ordered.

Date: March 14, 2006

                                     DAVID F. HAMILTON, JUDGE
                                     United States District Court
                                     Southern District of Indiana

Copies to:

John David LaDue
BOVERI MURPHY RICE & LADUE LLP
jladue@bmrl-law.com

Mark Steven Lillie
KIRKLAND & ELLIS LLP
mlillie@kirkland.com

Walter Douglas Moody
MYERS & FULLER PA
dmoody@dealerlawyer.com

Patrick David Murphy
BOVERI MURPHY RICE & LADUE LLP
pmurphy@bmrl-law.com

Joseph Michael Russell
KIRKLAND & ELLIS, LLP
jrussell@kirkland.com

Richard K. Shoultz
LEWIS & WAGNER
rshoultz@lewiswagner.com

Richard Neil Sox, Jr.
MYERS & FULLER PA
rsox@dealerlawyer.com